IN RE the MARRIAGE OF: Paula R. ERATH,
Petitioner-Respondent,

v.

Barry D. ERATH, Appellant.

Court of Appeals

*Nos. 86–1958, 87–0211. Submitted on briefs May 29, 1987.—
Decided October 15, 1987.*

(Also reported in 417 N.W.2d 407.)

For the appellant the cause was submitted on the briefs of *James P. Gerlach* and *LaRowe, Gerlach, Chiquoine & Kahler, S.C.,* of Reedsburg.

For the petitioner-respondent the cause was submitted on the brief of *Annette L. Gerhardt,* and *Conway, Conway & Gerhardt, S.C.* of Baraboo.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J.   These appeals arise out of Barry Erath's efforts to eliminate or reduce his mainte-

nance and child support obligations to his ex-wife, Paula. The issue in each of Barry's appeals is whether the trial court erred in its determination that a change of circumstances had not occurred. Each issue involves the interplay between maintenance awarded solely to compensate a nonstudent wife for her lost educational opportunity and child support set solely on the basis of guidelines. In Case No. 86–1958, we find no error and we affirm. In Case No. 87–0211, we find that the court's finding that no change of circumstances had occurred is clearly erroneous and we reverse and remand for further proceedings.

The divorce judgment was entered in May 1986. The trial court found that Paula had helped support the family while Barry attained his education, that they had agreed that Barry would help her complete her education after he completed his, and that she left the marriage with substantially less earning capacity than he. The court noted that under *Marriage of Haugan v. Haugan,* 117 Wis. 2d 200, 343 N.W.2d 796 (1984), a spouse who contributes to the education of the other is entitled to fair and equitable compensation. Since the parties' debts exceeded their assets, the court ordered that Barry pay Paula maintenance of $300 per month while she pursued her education full time. The court did not discuss how it established the $300 payments or relate that award in any way to child support.

The parties have two minor children, Derek and Andrea. They agreed to joint custody of Derek and to his physical placement with Barry. They did not agree on Andrea's custody. The trial court awarded her custody to Paula. The court found that Barry's gross monthly earnings were $1,827 and Paula's were $903. The court concluded that child support should be set

at a percentage of the noncustodial parent's income, pursuant to the Department of Health and Social Services' "guidelines"[1] and determined that Barry should pay Paula $156.00 per month support, based on the following calculations:

**Barry pays for Andrea's support—**
$$\$1,818 \text{ [sic]} \times .17 = \$309$$
**Paula pays for Derek's support—**
$$\$\ 903 \times .17 = \underline{\$153}$$
**Difference payable by Barry to Paula** $\quad$ $156

In early 1986 the parties agreed that Derek would live with Paula and that applying the child support guidelines, Barry would pay $450 per month, approximately 25% of his gross income, to Paula. The court entered an order on the stipulation, and Barry began paying that amount in February 1986.

In May 1986 Paula notified Barry that she was enrolled in summer school and that the $300 monthly maintenance payments to her should begin on June 15, 1986. On July 1, 1986 Barry moved to terminate the maintenance payments on the ground that his

---

[1]Section 767.25(1p), Stats. 1983, authorizes the court to set child support using the percentage standard adopted under sec. 767.395(3), Stats., which directs the Department of Health and Social Services to "adopt a standard for determining a child support obligation based upon a percentage of the gross income and assets of either or both parents." We judicially notice that on December 20, 1983 the secretary of the Department of Health and Social Services advised the Wisconsin judiciary of the "Percentage of Income Standard for Setting Child Support Awards." The department subsequently adopted Wis. Adm. Code ch. HSS 80, Child Support Percentage of Income Standard, effective February 1, 1987. In the case before us, the trial court's calculations have not been challenged.

child support payments had increased from $156 to $450 per month.

Barry's first motion was heard July 17, 1986, before the same trial judge who had heard the divorce. When denying the motion, the judge said that during the divorce trial, he realized that Paula could not obtain an education on $300 per month and that she would have to obtain grants and probably loans to enable her to finish her education. By the same token, the judge had believed that possibly Barry would have to borrow to help Paula obtain her education. The judge said that Barry was steadily employed, should have a good credit rating and, if necessary, may have to borrow to pay Paula. The judge found that the change in Derek's physical placement was not a change in circumstances affecting maintenance. The court therefore refused to terminate maintenance and entered the order which Barry appealed in Case No. 86–1958. We discuss that appeal before proceeding to the second motion, order and appeal.

■

Although the $300 per month awarded to Paula is purely compensatory, it is alterable with respect to how and when it is payable. It was awarded by way of maintenance and is therefore subject to modification. Section 767.32(1), Stats., provides that after a judgment providing for maintenance payments, the court may "revise and alter such judgment respecting the amount of such maintenance ...." Only if maintenance has been waived and the waiver has been incorporated into the judgment is the court foreclosed from revising the judgment with respect to maintenance. *Fobes v. Fobes,* 124 Wis. 2d 72, 77, 368 N.W.2d 643, 645 (1985).

A provision for maintenance may be modified only if a substantial change has occurred in the parties' financial circumstances. *Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 195, 327 N.W.2d 674, 677 (1983). The first step in a substantial change analysis is a factual inquiry. It requires a determination of the parties' financial circumstances when the award was made and a determination of their present financial circumstances. Each determination is necessarily limited to those circumstances which the trial court took into account when making the award. We must sustain a trial court's factual determinations if they are not clearly erroneous. Sec. 805.17(2), Stats.

Nothing in the record indicates that when awarding Paula $300 monthly maintenance, the trial court took into account Barry's child support obligation. Nor was the trial court compelled to do so under *Haugan.* The *Haugan* court noted that compensation to the spouse who supported the student spouse "may be accomplished ... through maintenance payments, property division, or both." 117 Wis. 2d at 208, 343 N.W.2d at 800. The court then suggested "several approaches for the trial court to consider in reaching its decision as to a maintenance award, property division, or both for the supporting spouse." *Id.* at 211, 343 N.W.2d at 802. None of the suggested approaches took into account child support or other obligations. *See also In re Marriage of Lundberg,* 107 Wis. 2d 1, 14, 318 N.W.2d 918, 924 (1982) ($25,000 lump sum maintenance award to compensate wife for her investment in husband's degree affirmed). That is undoubtedly why the trial court assumed when granting the divorce that Barry might have to borrow to meet his maintenance obligation.

The significance of the change in Derek's physical placement is that it increased Barry's support obligation. Because, however, the trial court established maintenance without taking into account Barry's support obligation, a change in that obligation is not taken into account when determining whether the parties' financial circumstances have changed.

We conclude that the trial court's finding that the change in Derek's placement was not a change affecting maintenance is not clearly erroneous. We therefore affirm the order in Case No. 86–1958.

After the trial court entered the order we have just affirmed, Barry moved to eliminate maintenance "and/or" reduce child support. The basis for his second motion, filed in September 1986, was that he could not pay maintenance because no loans were available to him. He contended that he could not pay both $300 maintenance and $450 support and therefore one or both awards had to be reduced. His second motion resulted in the order on appeal in Case No. 87–0211.

The trial court, a second judge presiding, heard Barry's second motion in November 1986. Barry testified that his biweekly gross pay was now $954. He had filed bankruptcy and entered a wage earner's plan pursuant to which the bankruptcy court ordered him to pay $31 per month toward his debts totaling between $10,000 and $11,000. His expenses had not appreciably changed since his first motion was heard in July, but he was paying $477 per month in child support, based upon 25% of his increased gross income. After the July hearing on his first motion, two savings and loan associations had rejected his applications to borrow $3,600 which he had intended to use to

pay maintenance for one year. Paula's attorney stipulated that Barry could not get a loan.

The trial court knew that in July, Barry's motion to eliminate maintenance had been denied because the circumstances had not changed. The court found no change since the July hearing. The court said that it was unable to find a change in Barry's ability to pay and, indeed, there might even be a slight increase in his ability.[2] Although the court confined its discussion to maintenance, it denied the motion to modify support as well.

We infer from the trial court's decision that the court implied that no change of circumstance had occurred affecting support, notwithstanding the original assumption that Barry could borrow to pay maintenance and the undisputed fact that he had recently learned he could not. *See Sohns v. Jensen,* 11 Wis. 2d 449, 453, 105 N.W.2d 818, 820 (1960) (appellate court will assume finding was made which supports judgment).

The finding of no changed circumstances regarding support is not clearly erroneous. When originally establishing support, the trial court relied exclusively on the child support percentage of income standards. After Derek began to live with Paula, the parties stipulated to support based on the standards. When child support is determined solely by using the standards, maintenance payable to a spouse does not enter the computation.

---

[2]The meaning of the finding is obscure. The first judge made no finding whether Barry could pay both $477 support and $300 maintenance from his monthly earnings. Since the second judge's finding relates to a nonexistent finding by the first judge, we do not infer that the second judge found Barry could meet all his obligations from his earnings.

We turn to the trial court's finding of no changed circumstance regarding maintenance. This finding is clearly erroneous. The circumstances taken into account at the time of the divorce and at the July hearing are indisputably different from the circumstances at the time of the November hearing on the second motion. The court had assumed at the time of the divorce that Barry might have to obtain a loan to pay maintenance. The court noted at the July hearing on Barry's first motion that he should have a good credit rating and therefore made no finding whether Barry could meet his support and maintenance obligations from his earnings. But during the hearing on his second motion in November, Barry showed, and counsel for Paula stipulated, that Barry cannot obtain a loan.

Thus, if Barry cannot pay both support and maintenance from his earnings, the undisputed fact that Barry cannot obtain a loan will provide a predicate for the conclusion of law that the change in circumstances is substantial, the second step in the analysis. Accordingly, if Barry cannot pay both support and maintenance from his earnings, the trial court in its discretion may modify the maintenance award with respect to how it should be paid. This award consists of periodic payments. Even if a lump sum compensatory maintenance award has been made payable in installments, "[t]he size of the payments and length of time over which they can be made should be set according to the ability of the [payor] spouse to pay. The trial court should retain jurisdiction to alter the amount and timing of the payments if the financial circumstances of the payor spouse

change drastically." *Lundberg,* 107 Wis. 2d at 15, 318 N.W.2d at 924.

We add that the form of modification is within the trial court's discretion. Reducing the amount payable monthly and carrying forward the deficiency, or postponement or suspension, may be appropriate.

We therefore affirm the order appealed in Case No. 87–0211 insofar as it denied Barry's motion to modify support and reverse the order insofar as it denied his motion to modify maintenance. We remand the matter for further consideration of modification if and to the extent Barry cannot meet that obligation from his earnings.

*By the Court.*—In Case No. 86–1958, order affirmed. In Case No. 87–0211, order affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.