**In re the Marriage of Suzanne Hebert HAMILTON, Appellant–Petitioner,**

v.

**Richard Wayne HAMILTON, Appellee–Respondent,**

**No. 82A01–0804–CV–151.**

Court of Appeals of Indiana.

Oct. 29, 2008.

Rehearing Denied Dec. 22, 2008.

Mary Lee Schiff, Ziemer, Stayman, Weitzel & Shoulders, Evansville, IN, Attorney for Appellant.

Scott A. Danks, Danks & Danks, Evansville, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Suzanne Hamilton appeals the trial court's order finding that her former husband, Richard Hamilton, was not in contempt of court for failing to pay child support as ordered by a Florida trial court. We hold that the trial court's decision to enforce the Florida child support obligation for less than the amount ordered by the Florida court was not an impermissible modification under the Uniform Interstate Family Support Act ("UIFSA"). We also find that the trial court did not abuse its discretion because the evidence clearly shows that Richard complied with the Indiana trial court's order. We affirm.

## Facts and Procedural History

Suzanne and Richard were married and had two children, born August 30, 1995, and March 14, 2000. The family lived in Florida. Richard worked as a movie projector technician. Richard and Suzanne sought a divorce, and on July 27, 2005, a Florida trial court entered its Consent Final Judgment of Dissolution of Marriage, which granted joint legal custody over the children to both parents, granted physical custody to Suzanne, and imposed a child support obligation on Richard. The court found that Suzanne's gross monthly income was approximately $1733.34. The court also found that Richard was capable of making $50,000 per year, an imputed gross monthly income of $4166.67. In addition to Suzanne's and Richard's incomes, the court also considered Suzanne's expenses for the children's insurance and daycare and then ordered Richard to pay $1473 per month for child support. Before the dissolution, Richard had indicated to the trial court that he would no longer be residing in Florida. However, Suzanne and the children remained in Florida.

Richard did not meet his child support obligation. On January 13, 2006, the Florida trial court ruled on Suzanne's motion for contempt/enforcement and found that Richard owed $11,879 to Suzanne for child support. The trial court found that Richard had the ability to pay his child support but was nevertheless in willful contempt of the Florida support order and ordered Richard to pay a purge amount of $7500 or serve 170 days in jail. The trial court also scheduled arrearage payments so that Richard would become current on his support obligation.

At some point in 2006, Suzanne discovered that Richard was living in Evansville, Indiana, with his parents. Suzanne registered the Florida court's orders with the Vanderburgh County trial court and asked the court to enforce them. The Indiana trial court ordered that the Florida support order be given full faith and credit as a foreign judgment registered pursuant to Indiana law. The trial court also ordered that the Florida contempt order be given full faith and credit, except as to its provision that Richard serve 170 days in jail. Although the trial court found that Richard was in contempt of the Florida support order, the trial court reasoned that the Full Faith and Credit Clause of the United States Constitution did not require Indiana to adopt the same enforcement remedy that the Florida court had, nor was there any Indiana law to compel the trial court to employ Florida's enforcement remedy.

At a hearing on March 20, 2007, Richard testified he had been fired from his job at the Clay Center after a Clay Center employee smelled alcohol on him when he showed up for work a few hours after drinking six beers. The court ordered Richard to report to the Vanderburgh County Jail on May 4, 2007. However, the court ruled in its order that Richard could petition for a stay of the sentence upon completing the following: paying Suzanne $1000, becoming employed full-time, and executing a wage assignment to Suzanne for the greater of the amount specified by the Indiana Child Support Guidelines or $150 per week.

On May 25, 2007, Suzanne filed a verified petition for contempt against Richard because he had not consistently paid either his child support obligation or the $150 per week ordered by the court. The court held a hearing, and Richard testified that he had been doing odd construction and moving jobs, including a week-and-a-half-long stint at Ameriqual, a one-day job at Sofa Express, and a one-shift stint at Uniseal, before obtaining employment through a staffing agency at Spectronics in Newburgh. The court ruled on Suzanne's veri-

fied petition and found that Richard was not in contempt because although he had not made consistent weekly payments of $150, he had made a lump-sum payment of over $3000 to Suzanne, gained full-time employment, and had executed the wage assignment.

On November 13, 2007, Suzanne filed her verified petition for contempt and motion to review the court's standing orders. In her verified petition, Suzanne argued that Richard continued to fail to pay his child support obligation under the Florida support order and that Richard consistently failed to pay the $150 per week ordered by the Indiana trial court in its order. Suzanne argued that the court had effectively modified the Florida support order by only requiring Richard to pay $150 per week. She asked the court to find Richard in contempt and order him to serve 170 days in jail.

Richard argued that it was too late for Suzanne to appeal the trial court's finding that Richard was not in contempt of the Indiana court's order. · At the court's hearing on the matter, Suzanne presented uncontroverted evidence that Richard was living rent-free with his parents, who were paying for his food, cell phone, utilities, car, and sometimes gas. Richard testified that he worked between thirty and fifty hours a week and earned $7.00 per hour. Suzanne also presented evidence that Richard did not work Friday, Saturday, or Sunday and was not sending out resumes to find a second job. Richard testified that for the previous three months he had only paid $150 per week and failed to pay the full child support obligation.

On March 14, 2008, the trial court found that Richard was not in contempt of the previous orders of the court. The trial court's order states in part:

The Court finds that under the Federal Consumer Credit Protection Act (15 U.S.C. 1673(b)) the federal limit for income withholding applies to the aggregate disposable weekly earnings (ADWE). ADWE is the net income left after making mandatory deductions such as: state, federal, local taxes, Social Security taxes, statutory pension contributions, and Medicare taxes. The Federal CCPA limit is 50% of the ADWE for child support and alimony, which is increased by: 1) 10% if the employee does not support a second family; and/or, 2) 5% if the arrears [are] greater than 12 weeks. At the present time, Respondent/Father is voluntarily paying in excess of the maximum 60% by prior order of this Court.

The Court finds that Respondent/Father is not in contempt of the Indiana Court's prior orders at this time.

Appellant's App. p. 1–2. Suzanne now appeals from this order.

### Discussion and Decision

On appeal, Suzanne contends that the Indiana order was an improper modification of the Florida support order. Suzanne also contends that the trial court abused its discretion in not finding Richard in contempt of the Florida support order and the Indiana order. Suzanne argues that the trial court improperly held that "under the FCCPA it had no authority to make the Father pay child support in excess of 60% of his take home earnings." Appellant's Br. p. 19.

### I. Modification

■ Suzanne argues that the Indiana trial court's order "has improperly permitted the Father to effectively reduce his monthly child support obligation" created in the Florida support order and, as a result, the Indiana trial court has impermissibly modified the Florida support order. *Id.* at 16. We disagree.

The Full Faith and Credit Clause mandates that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. Const. art. IV, § 1. The United States Supreme Court has explained that full faith and credit means "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982); *see also Krilich v. Soltesz/Brant Dev. Co.*, 771 N.E.2d 1169, 1172 (Ind.Ct.App.2002), *reh'g granted in part, trans. denied.*

■■■ Full faith and credit does not, however, mean that states must adopt the practices of other states regarding the time, manner, and mechanisms for enforcing judgments. *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 235, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998); *Mahl v. Aaron*, 809 N.E.2d 953, 959 (Ind.Ct.App.2004). "Enforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the evenhanded control of forum law." *Baker by Thomas*, 522 U.S. at 235, 118 S.Ct. 657; *see also* Restatement (Second) of Conflict of Laws § 99 (1969) ("The local law of the forum determines the methods by which a judgment of another state is enforced.").

■■■ Full faith and credit for child support orders are governed by the UIFSA. Ind.Code §§ 31–18–1–1 to 31–18–9–4. The UIF SA's primary purpose is to simplify child support matters and the collection of child support in today's mobile society. *Tate v. Fenwick*, 766 N.E.2d 423, 426 (Ind.Ct.App.2002). It is a "mechanism ... for cooperation between state courts in enforcing duties of support." *Johnston v.*

*Johnston*, 825 N.E.2d 958, 962 (Ind.Ct. App.2005) (citing *Stidham v. Whelchel*, 698 N.E.2d 1152, 1156 n. 1 (Ind.1998)). Among other things, the statute provides guidance for Indiana trial courts asked to exercise jurisdiction over child support matters where one or both parties do not live in the state and where another state's courts have already exercised jurisdiction or may seek to do so. *Basileh v. Alghusain*, 890 N.E.2d 779, 783 (Ind.Ct.App. 2008), *trans. pending.* Under the UIFSA, two distinct types of jurisdiction over child support orders are recognized: the jurisdiction for a responding state to enforce a child support order and the jurisdiction to modify a support order. *Id.* Regarding jurisdiction to modify a child support order, a state with continuing, exclusive jurisdiction may modify a child support order. *Id.* A responding state, however, only has jurisdiction to enforce a registered foreign child support order and may not modify it. Ind.Code § 31–18–6–3.

The question becomes when are the actions of a responding state permissible enforcement rather than impermissible modification. Other jurisdictions have wrestled with this question. For example, in *Walker v. Amos*, the Ohio Court of Appeals held that under the Uniform Reciprocal Enforcement of Support Act, a precursor to the UIFSA, the trial court's decision to suspend enforcement of a parent's child support obligation was an improper modification of an Indiana support order. 140 Ohio App.3d 32, 746 N.E.2d 642, 648 (2000). The court also noted that the result would be the same under the UIFSA, which Ohio had then recently adopted. *Id.* However, in *Reik v. Bowden*, the Ohio court held that the trial court's decision to suspend enforcement of the parent's child support obligation was not an improper modification because, based on the language of the divorce decree at issue, the

underlying obligation was not suspended. 172 Ohio App.3d 12, 872 N.E.2d 1253, 1257 (2007), *discretionary appeal and cross-appeal not allowed.* New York's appellate division found in *Reis v. Zimmer*, 263 A.D.2d 136, 140–41, 700 N.Y.S.2d 609 (N.Y.App.Div.1999), *amended,* that the trial court's order that a father deposit his child support funds into an account to pay for transportation costs incurred in exercising his right to visitation and setting up toll-free telephone numbers for the children to reach him was an improper modification of the original Massachusetts support order even though the amount of child support did not change. The court relied on the liberal definition of modification contained in the federal Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B(b), which defines "modification" as a "change in a child support order that affects the amount, scope, or duration of the order and modifies, replaces, supersedes, or otherwise is made subsequent to the child support order." *Reis,* 263 A.D.2d at 141, 700 N.Y.S.2d 609.

In this case, Florida has continuing, exclusive jurisdiction to modify the support order because Suzanne and the children still reside in Florida. *See* Ind.Code § 31–18–2–7(a)(1); Fla. Stat. Ann. § 61.13(1)(a) (West 2008). On the other hand, Indiana, as a responding state, may not modify the Florida support order but may only enforce it.

Inherent in its enforcement powers, the Indiana trial court had discretion to consider the facts and circumstances of this particular case and craft an enforcement mechanism that would encourage Richard's compliance with the Florida support order. This discretion does not allow the Indiana trial court to suspend the underlying obligation but does allow the trial court to determine the manner of compliance with the order. Indiana Code § 31–18–3–

5(b)(2) provides that to the extent otherwise allowed by law, the trial court can "[o]rder an obligor to comply with a foreign support order, specifying the amount and manner of compliance." *See Smith v. Hall,* 707 N.W.2d 247, 248 (N.D.2005) (describing how trial court imposed a $100 per month minimum payment to suspend jail time for failure to pay a $250 per month child support obligation).

We determine that the Indiana trial court's order is a permissible enforcement order and not an impermissible modification order for two reasons. First and most notably, the trial court gave full faith and credit to the $1473 monthly child support obligation ordered by the Florida court. The trial court did not suspend Richard's obligation to pay $1473 per month in child support. Each month that Richard does not pay the full child support obligation, his arrearage will continue to grow. Second, the court, after hearing evidence of Richard's employment and other circumstances, did require him to do certain things to avoid incarceration including paying a purge amount, becoming employed, and executing a wage assignment.

We recognize that there can be a fine line between enforcement and modification. However, trial courts need broad discretion to use their best judgment when crafting the most effective enforcement remedy in a child support case. In some cases, it will better serve the purpose behind a child support order for a trial court to enforce the child support order for less than the full amount because it would be better for the child to receive some support than none at all. In other cases, it will better serve the purpose of a child support order for the trial court to incarcerate the obligor to encourage him or her to pay the arrearage or another purge amount the trial court believes the obligor

to be capable of paying. However, it is the trial court that considers the circumstances present in a particular case and is best able to make that choice. Because in this case the underlying obligation continued to accrue and the trial court's order required certain obligations of Richard including finding employment, paying a purge amount, and paying weekly child support payments, the trial court properly exercised its enforcement power.

## II. Contempt

The next question for review is whether the trial court abused its discretion by not finding Richard in contempt of the Florida support order or the Indiana court's order. The determination of whether a party is in contempt of court is a matter within the trial court's discretion, and the trial court's decision will only be reversed for an abuse of that discretion. *Norris v. Pethe*, 833 N.E.2d 1024, 1029 (Ind.Ct.App.2005). A court will be deemed to have abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Mitchell v. Mitchell*, 871 N.E.2d 390, 394 (Ind.Ct.App.2007). As with other sufficiency matters, when reviewing a trial court's determination on contempt matters, we will neither reweigh evidence nor judge witness credibility. *Id.* We will affirm unless, after a review of the entire record, we have a firm and definite belief that a mistake has been made by the trial court. *Id.*

Child support obligations in Indiana have long been enforceable by contempt proceedings. *Pettit v. Pettit*, 626

N.E.2d 444, 445 (Ind.1993). Contempt is not appropriate unless the parent has the ability to pay the support due and his or her failure to do so was willful. *Id.* at 448.

In Suzanne's November 13, 2007, verified petition for contempt, she alleged that Richard had failed to pay his full child support obligation as ordered by the Florida support order and domesticated by the Indiana trial court. She also alleged that he failed to consistently pay the $150 per week as ordered by the Indiana court. Suzanne asked the trial court to review its standing orders and find that Richard was in contempt of both orders.[1] At the hearing on Suzanne's contempt petition, Suzanne again reiterated that both orders were before the court because of Richard's recurring failure to pay his child support obligation. In the resulting March 4 Order, the trial court found that Richard was not in contempt of the court's previous orders.

We agree with the trial court that Richard was not in contempt of the trial court's order, which provides in pertinent part:

4. However, since that time Husband, at least in part, through his own conduct has lost his employment. He has failed to look for other employment and has spent a considerable amount of time in leisure activity that could have been [devoted] to working and supporting his children.

5. The Court therefore grants the Petition for Body Attachment and Orders the Husband to report to the Vanderburgh County Community Corrections Center at 9:00 a.m. on Friday, May 4,

---

1. To be sure, Richard was not making the full payments set forth in the Florida order, but Indiana's order was designed to enforce the Florida order and Richard was in compliance with this Indiana order, as discussed below. Since the trial court failed to find him in contempt of the Indiana order, it would nec- essarily follow that the court could not find him in violation of the Florida order. As a result, we need only consider compliance with the Indiana order, which resulted from the trial court's consideration of Richard's ability to pay.

2007, to serve the 170 day executed sentence previously imposed by the Florida Court and affirmed by this Court in its Order of September 28, 2006.

6. Husband may petition this Court for a stay of said sentence upon the completion of the following:

   A. Payment to the Wife of $1,000.00;

   B. Becoming employed full time;

C. Executing a wage assignment to Wife in an amount specified by the Indiana Child Support Guidelines or $150.00 per week, whichever is greater.

Appellant's App. p. 89–90.[2]

As stated above, the Indiana trial court's order was a proper exercise of the court's power. The record shows that as of June 4, 2007, Richard did make a payment of over $1000 to Suzanne, he did become employed full-time, and he did execute a wage assignment to Suzanne for $150 per week. Appellant's App. p. 96. At the January 14, 2008, hearing on Suzanne's motion, Suzanne's attorney admitted in her opening statement that Richard is meeting the bare minimum to stay out of jail by paying the $150 per week. Jan. 14, 2008, Hr. Tr. p. 6. Suzanne's Exhibit 5, the

Arrearage and Interest Calculator, shows that Richard made the $150 weekly payment fairly consistently. Ex. 5 p. 1–2. Also, Richard testified at the hearing that he had gained full-time employment and was working between thirty and fifty hours a week. Jan. 14, 2008, Hr. Tr. p. 15. Thus, the trial court did not abuse its discretion by finding that Richard was not willfully in contempt of this order.

■■■ Suzanne also argues that the trial court erroneously based its finding that Richard was not in contempt upon a determination that the Federal Consumer Credit Protection Act ("FCCPA"), 15 U.S.C. § 1673, prohibited the trial court from fully enforcing the Florida support order.

■■■ Suzanne is correct that the FCCPA does not determine whether a party can be found in contempt of court. As described above, a party can only be held in contempt if the party has willfully violated a court order. However, the FCCPA is concerned only with the maximum percentage of income that can be garnished by courts or consumer creditors.[3] The question of whether a court's

---

**2.** The record does not reveal whether $150 per week was in fact greater than the amount specified by the Indiana Child Support Guidelines, but we note that the parties and trial court seemed to assume that a garnishment of $150 per week was required for Richard to comply with the court's order.

**3.** The FCCPA applies to wage garnishments in child support cases. *White v. White,* 878 N.E.2d 854, 859–60 (Ind.Ct.App.2007); *see also* Ind.Code § 31–16–15–3.5(b)(5)(J) (for Title IV–D agency cases, "an income payor shall honor all withholdings to the extent that the total amount withheld does not exceed limits imposed in 15 U.S.C. 1673(b)"). We acknowledge *Forbes v. Forbes,* 610 N.E.2d 885, 888 n. 4 (Ind.Ct.App.1993), where this Court noted that 15 U.S.C. § 1673 does not apply in child support garnishment cases because it applies only "to the garnishment of earnings in the context of consumer credit

protection." However, there is no indication in that case that the precursor to Indiana Code § 31–16–15–3.5, the Title IV–D statute, was brought to the court's attention. Indiana Code § 31–2–10–9(b)(4) (1993), in effect at the time *Forbes* was decided, also stated that 15 U.S.C. § 1673(b) provides the maximum for wage garnishment in Title IV–D cases.

The FCCPA does not limit how much child support a court can order; rather, it only limits the amount that can be garnished from wages. *Frankel v. Frankel,* 165 Md.App. 553, 886 A.2d 136, 155 (2005), *cert. granted, cert. dismissed as improvidently granted, reconsideration denied; Carpenter v. Mumaw,* 230 Wis.2d 384, 602 N.W.2d 536, 542 (Wis.Ct. App.1999), *review denied; Arthur v. Arthur,* 130 Ohio App.3d 398, 720 N.E.2d 176, 184–85 (1998). The FCCPA does not limit the garnishment of property other than earnings. *In re Marriage of Eklofe,* 586 N.W.2d 357, 359

order meets federal statutory requirements regarding the maximum percentage of wages that can be legally garnished in the first instance requires a separate analysis from whether an obligor has willfully violated a court order. For example, an obligor could be paying through a wage-withholding order the maximum percentage allowed under the FCCPA, but still be found in contempt if the court determines that the obligor is willfully failing to pay the portion of the support obligation in excess of the garnishment, perhaps due to voluntary underemployment or concealment of income.[4]

But Suzanne incorrectly asserts that the trial court in this case based its finding that Richard was not in contempt on an incorrect application of the FCCPA. First, the trial court did not state that it based its conclusion on the FCCPA. Second, as stated above, the record amply demonstrates that Richard was in compliance with the order. Because Richard complied with the previous orders of the trial court, we find that the trial court's statement regarding the FCCPA was merely an observation rather than the basis of its finding. Accordingly, we conclude that the court did not abuse its discretion by declining to find Richard in contempt.

■ As a final note, we address Richard's request for attorneys' fees, Appellee's Br. p. 11, and Suzanne's request, Appellant's Reply Br. p. 1, that we strike Section IV of Richard's brief. Indiana Appellate Rule 66(E) provides for an award of damages and attorneys' fees if an appeal, petition, or motion, or response is found by a court on appeal to be frivolous or in bad faith. The damages and fees are awarded in the court's discretion. *Pramco III, LLC v. Yoder*, 874 N.E.2d 1006, 1014–15 (Ind.Ct.App.2007). However, we use extreme restraint in awarding appellate attorneys' fees "because of the potential chilling effect upon the exercise of the right to appeal." *Pardue v. Smith*, 875 N.E.2d 285, 292 (Ind.Ct.App.2007).

Richard contends that Suzanne brings this appeal in bad faith because the appeal is frivolous, without merit, and vindictive. However, we do not find Suzanne's arguments to be without merit. In fact, we find that Suzanne's appeal presented an interesting question of law regarding the boundary between the modification and enforcement of child support orders. Because the appeal is not frivolous or without merit, we deny Richard's request for attorneys' fees on this ground.

■ Richard also argues in Section IV of his brief that this appeal has been made moot. In support of this contention, Richard attempts to supplement the record available to the trial court with evidence of further proceedings in Florida occurring after the Indiana order currently appealed from. We note that we have already denied Richard's petition to supplement the record with evidence of the Florida pro-

---

(Iowa 1998). For obligors who are not supporting a second family, it limits child support withholding to 60% of an obligor's disposable earnings, or 65% to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period before the twelve-week period which ends with the beginning of such workweek. 15 U.S.C. § 1673(b).

4. One possible scenario is that of a retired parent with a sizeable monthly child support obligation who makes little in weekly wages but owns substantial property. Although a court could only order a small part of the monthly obligation to be garnished, the obligor would nevertheless be responsible for complying with the court's orders if able to by selling property. A willful failure to do so could result in a contempt finding; notwithstanding the fact that the garnishment complied with the FCCPA.

ceedings, and it is well settled that we cannot consider on appeal matters outside the record. *Schaefer v. Kumar*, 804 N.E.2d 184, 187 n. 3 (Ind.Ct.App.2004), *trans. denied.* Accordingly, we strike Section IV of Richard's brief and deny his request for attorneys' fees.

Affirmed.

KIRSCH, J., and CRONE, J., concur.